eign coast, and selling them to perpetual bondage in another foreign country. If we could strip the present case of the associations connected with its localities on the coast of Africa, where we know the slave trade exists with all its unnumbered horrors, there would be no difficulty in believing, that the mere act of transporting slaves, as passengers for hire, without any interest or title in them, and without any intention to fix upon them, by any personal act, the state of future slavery, could not be the offence intended by the act of congress. The transportation of slaves for hire, from one port to another of the Portuguese settlements on the coast of Africa, though it may there facilitate the operations of the slave dealer, is not in substance a different case from transporting the same slaves from one port to another in the Brazils or in Portugal.

There is another consideration, not wholly without weight in this cause. In the other acts against the slave trade, the transportation of slaves from the coast of Africa, and from one foreign country to another, is in express terms prohibited. See Act 1800, c. 51, § 2; Act 1807, c. 77, § 4; Act 1818, c. 86, § 4. If the legislature had intended to increase the punishment, and to make the mere transportation of slaves a capital offence, it would be natural to expect, in the present act, some language significant of that intent, like that found in the former acts. The very omission, therefore, of the appropriate phraseology, furnishes a presumption, that the legislature had some other and different offence in their view.

Mem. After this charge the jury found a verdict of not guilty for the prisoner. He was afterwards indicted on the second section of the act of 1800 (chapter 51), and was admitted to plead nolo contendere: and thereupon he received sentence for the offence.

---

## Case No. 14,546.

### UNITED STATES v. BAUER.

[Cited in Re Lindouer, Case No. 8,358. Nowhere reported; opinion not now accessible.]

---

UNITED STATES (BAULIGUY v.). See Case No. 1,696a.

---

## Case No. 14,547.

### UNITED STATES v. BAYER et al.

[4 Dill. 407; [1] 13 N. B. R. 400; 3 Cent. Law J. 11.]

Circuit Court, D. Minnesota. 1876.

CONSPIRACY—ACTS MADE PENAL BY THE BANKRUPT ACT—REV. ST. §§ 5132, 5440, CONSTRUED.

1. Under the statute (Rev. St. §§ 5132, 5440), other persons than the bankrupt can conspire with the latter to commit the acts made crimi-

---

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

nal by the 7th and 10th subdivisions of section 5132 of the Revised Statutes.

2. It seems that under the criminal section of the bankrupt act (Rev. St. § 5132), one who procures and abets the person against whom the proceedings in bankruptcy are pending, to commit the acts therein made criminal, may be indicted, though not expressly referred to in the statute.

[Cited in U. S. v. Snyder, 8 Fed. 806; Id., 14 Fed. 556; U. S. v. Stevens, 44 Fed. 141.]

[Cited in People v. McKane, 143 N. Y. 455, 38 N. E. 952.]

The defendants are indicted for a conspiracy to commit offences against the United States in violation of the penal section of the bankrupt act (Rev. St. §§ 5132, 5440). The indictment contains two counts. The first count, based upon section 5132, subd. 10, and section 5440, after alleging the adjudication of bankruptcy of one John Bayer by the district court for the district of Minnesota, June 2, 1875, and after setting forth the facts, showing the jurisdiction of that court in said matter of bankruptcy, proceeds to charge that the said John Bayer, and the defendants Kargleder and Ober, within three months next before the bankruptcy proceedings aforesaid were commenced, to-wit, on June 1st, 1874, in said district, amongst themselves, unlawfully and fraudulently conspired, confederated, and agreed together to commit a certain offence against the United States, to-wit: by the execution and delivery, then and there, by said John Bayer, of a certain instrument in writing, signed by him, wrongfully and unlawfully, and with intent to defraud the creditors of said John Bayer, to mortgage, sell, and dispose of (while they still remained unpaid for, as in the indictment alleged), to said John Kargleder, otherwise than by bona fide transactions in the ordinary way of the trade of said Bayer, certain goods and chattels of said Bayer which had been obtained on credit, etc. It is then alleged that said Bayer and said Kargleder thereupon performed certain specified acts in order to effect the object of said conspiracy. [See Case No. 14,548.] The second count, based upon section 5132, subd. 7, and upon section 5440, after repeating the preliminary averments of the first count, further alleges the appointment of an assignee in bankruptcy of said Bayer's estate, and the proof in bankruptcy by said Kargleder of a false and fictitious debt against said Bayer's estate, and the said Bayer's and Ober's knowledge of the premises; and further charges that the said Bayer, Kargleder, and Ober did then unlawfully conspire and confederate together to commit an offence against the United States, to-wit: did conspire and confederate together, that Bayer, knowing as aforesaid that Kargleder had proved a false and fictitious debt against his estate, should then and there, and continually for more than one month thereafter, fraudulently and unlawfully wholly fail, refuse, and neglect to disclose the same to his said assignee in bankruptcy. It is then aver-